## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FATIMAH ALEXANDER,<br>　　Plaintiff,<br><br>　　v.<br><br>NAVY FEDERAL CREDIT UNION,<br>　　Defendant. | :<br>:<br>:<br>: CIVIL ACTION NO. 25-CV-2833<br>:<br>:<br>: |

### MEMORANDUM

**COSTELLO, J.**                                                                                     **SEPTEMBER   3 , 2025**

Plaintiff Fatimah Alexander initiated this civil action by filing a *pro se* Complaint against Navy Federal Credit Union ("NFCU").[1] She seeks leave to proceed *in forma pauperis* (ECF Nos. 1, 5). For the following reasons, the Court will grant Alexander leave to proceed *in forma pauperis* and dismiss the Complaint.

### I.     FACTUAL ALLEGATIONS

Alexander opened a credit card account with NFCU on or about May 18, 2022. (Compl. at 6.) On April 26, 2024, NFCU deemed the account a loss and reported it as "charged off" to credit reporting agencies ("CRAs"). (*Id.*) NFCU "continued updating the account with a past due balance of $7,357." (*Id.*) Alexander states that, in early December 2024, she was denied financing at a buy-here-pay-here dealership on account of her derogatory credit report. (*Id.*) Alexander alleges that upon review, she discovered that NFCU was the sole negative tradeline.

---

[1] Alexander submitted a form complaint along with a four-page document outlining her alleged facts and legal claims. (*See* ECF No. 2.) The Court considers the entire submission to constitute Alexander's Complaint ("Compl."). The Court adopts the pagination supplied by the CM/ECF docketing system.

(*Id*.)  She did not previously know that NFCU reported the credit card account as both charged off and with a past due amount.  (*Id*. at 7.)

Alexander submitted a dispute through Experian's online dispute portal in which she challenged "the accuracy, completeness, and verifiability of the reporting."  (*Id*.)  Alexander specifically challenged NFCU's reporting of her account as both charged off and past due, which, Alexander claims, "are contradictory and materially misleading designations under the Fair Credit Reporting Act."  (*Id*.)  Alexander also allegedly filed a complaint with the Consumer Financial Protection Bureau ("CFPB") on December 8, 2024.  (*Id*.)  NFCU responded on January 30, 2025, and confirmed that the reporting was accurate.  (*Id*.)  Alexander says that in its response NFCU also denied that Alexander had the "right to rescind or opt-out of affiliate information sharing."  (*Id*.)  Alexander claims that NFCU ignored her "lawful disputes and demands for substantiation," and continued to update the disputed information with the CRAs.  (*Id*.)  On February 24, 2025, she sent NFCU a "Pre-Litigation Notice and Settlement Demand" disputing the "[c]ontradictory and inaccurate" charge-off and balance status, alleging that NFCU had not conducted a reasonable investigation, and complaining that it had not provided her with "verifying information or [an] itemized accounting" and that there were payment history discrepancies.  (*Id*.)  NFCU continued to send her billing statements in response to her requests for verification of the debt.  (*Id*.)  At some point, Experian updated the tradeline status to "verified as accurate."  (*Id*.)

On or around April 29, 2025, NFCU allegedly acknowledged that Alexander had made a cease and desist request, and, according to Alexander, agreed to "cease communications as requested but would continue to send periodic statements under the pretense of compliance with

2

Regulation E and Regulation Z."[2] (*Id*.) Alexander claims that the correspondence expressly provided it was "not an attempt to collect a debt," and she alleges that NFCU's continued practice of sending account statements undermines that statement and contradicts her demand that NFCU stop communications concerning the alleged debt. (*Id*.)

Alexander filed this civil action on May 30, 2025, alleging violations of the Fair Credit Reporting Act ("FCRA"), the Truth in Lending Act ("TILA"), and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), as well as state common law claims for negligence, misrepresentation, defamation, and libel. (*Id*. at 8-9.) She claims to have suffered denials of credit, emotional distress, embarrassment, and reputational harm as a result of NFCU's actions. (*Id*. at 7.) She seeks monetary damages, including treble and punitive damages available under the applicable statutes, costs, attorneys fees, and an injunctive order for NFCU to delete its tradeline from her credit reports and to prohibit further inaccurate reporting. (*Id*. at 9.)

## II.   STANDARD OF REVIEW

Because Alexander appears to be incapable of paying the filing fees to commence this action, the Court will grant her leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage, the Court accepts the facts alleged in the *pro se* complaint as true, draws all reasonable inferences in the plaintiff's favor, and considers whether

---

[2] The Court understands Alexander's use of "Regulation E and Regulation Z" to refer to regulations issued by the Consumer Financial Protection Bureau. Regulation E concerns rights, responsibilities, and liabilities of consumers who use electronic fund or remittance transfers. *See* 12 C.F.R. § 1005.1(b). Regulation Z implements provisions of the Truth in Lending Act, which is discussed in detail below. *See* 12 C.F.R. § 1026.1, *et seq.*

3

the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of the *pro se* Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (internal quotation omitted). An unrepresented litigant "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.* (internal quotation omitted).

## III. DISCUSSION

### A. Claim Under the FCRA

The FCRA, 15 U.S.C. §§ 1681-1681x, was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (noting that the FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner" (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010))). In the language of the FCRA, consumer reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v.*

*Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).[3]  Consequently, the FCRA places certain duties on those who furnish information to consumer reporting agencies, such as requiring furnishers to correct any information they later discover to be inaccurate.  *Bibbs v. Trans Union LLC*, 43 F.3d 331, 339 (3d Cir. 2022) (citing *SimmsParris*, 652 F.3d at 357; 15 U.S.C. § 1681s-2(a)(2)).

To state a plausible claim under the FCRA against a furnisher of credit information, a plaintiff must allege that he "filed a notice of dispute with a consumer reporting agency; the consumer reporting agency notified the furnisher of information of the dispute; and the furnisher of information failed to investigate and modify the inaccurate information."  *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016), *aff'd sub nom. Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87 (3d Cir. 2017) (*per curiam*); *see also* 15 U.S.C. § 1681s-2(b).  If the furnisher fails to comply with its obligations under the Act, "the aggrieved consumer can sue for noncompliance."  *Hoffmann v. Wells Fargo Bank, N.A.*, 242 F. Supp. 3d 372, 391 (E.D. Pa. 2017).  "[U]nder the FCRA, '15 U.S.C. § 1681s-2(b) is the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information.'"  *Eades v. Wetzel*, 841 F. App'x 489, 490 (3d Cir. 2021) (*per curiam*) (quoting *SimmsParris*, 652 F.3d at 358) (alteration omitted)).  As a threshold matter, a consumer "must allege facts from which the court can find that the information furnished to the reporting agencies and included in his credit report was 'inaccurate.'"  *Johnson v. J.P. Morgan Chase Bank N.A.*, No. 24-5631, 2025 WL 845910, at *3 (E.D. Pa. Mar. 18, 2025) (citing *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d

---

[3] The FCRA provides for civil liability for noncompliance due to willfulness and negligence.  *See* 15 U.S.C. § 1681n (creating civil liability for willful noncompliance with any portion of the Act); *id.* § 1681o (creating civil liability for negligent noncompliance with any portion of the Act).

619, 629 (6th Cir. 2018) (holding that "a threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)"), and *Holland v. Trans Union LLC*, 574 F. Supp. 3d 292, 298 (E.D. Pa. Dec. 7, 2021) ("[C]ourts have explicitly held that a showing of inaccuracy is essential to a § 1681s-2(b) claim in regard to furnishers of credit information.")).

### 1. Alleged Inaccuracies or Misleading Statements

Alexander never provides facts that describe any specific information in her report that is inaccurate.  Rather, she asserts that NFCU violated the FCRA by reporting to a CRA that her credit card account simultaneously as charged off and past due because those "are contradictory and materially misleading designations under the [FCRA]."  (ECF No. 2 at 7, ¶12.)  She states that she opened the account in 2022, and that NFCU reported a past due balance, which was approximately $7,300 in April 2024.  (*Id*. at 6, ¶8 (alleging that "NFCU *continued* updating the account with a past due balance of "7,357" (emphasis added)).)  Alexander asserts that, at that time, NFCU deemed the account a loss and reported it as charged off to the CRAs.  (*Id*., ¶ 9.)  Alexander appears to allege that, because "past due" and "charged off" are "contradictory and materially misleading designation, NFCU violated the FCRA.  (*Id*., ¶ 12.)

This allegation is not sufficient to allege a plausible claim under the FCRA because a report containing notations reflecting both a charged off amount and a non-zero past due balance is not inaccurate or misleading under the FCRA.  See *Shechter v. Experian Info. Sols., Inc.,* No. 20-5552, 2021 WL 323302, at *4 (D.N.J. Jan. 31, 2021) (concluding that plaintiff failed to plausibly allege that credit report contained inaccurate information violative of the FCRA where report showed the account as charged off and past due) citing *Artemov v. Transunion, LLC*, No. 20-1892, 2020 WL 5211068, at *3 (E.D.N.Y. Sept. 1, 2020) (finding that "[m]erely listing a past due balance—an undisputed legal obligation—for a charged off account is quite different than

incorrectly reporting a future monthly responsibility when such requirement no longer exists."); *Bolick v. DFS Servs. LLC*, No. 10-5211, 2011 WL 4359987, at *2-3 (E.D. Pa. Sept. 16, 2011) (rejecting plaintiff's claim that account reported as "past due" with a status of "charged off" was inaccurate pursuant to the FCRA stating "it was not inaccurate for Discover to report the account as 'past due' with a status of 'charge off/collection.'"). A past due balance does not vanish when a lender classifies an account as "charged off"; rather courts hold that the "past due" reference is factually correct because that debt remains legally enforceable. *Artemov*, 2020 WL 5211068, at *5. Accordingly, Alexander has not stated a plausible FCRA claim that NFCU reported inaccurate or materially misleading information on that basis.

### 2. Reasonable Investigation

After receiving a notice of dispute from a CRA, a furnisher of information must conduct a "reasonable investigation," which means that it must review the relevant information that the CRA has provided, consult its records, report the results of the investigation to the CRA, and notify other CRAs if there are inaccuracies. *Artemov*, 2020 WL 5211068, at *2-3 (citing 15 U.S.C. § 1681s-2(b)). Where a consumer alleges that a furnisher failed to conduct a reasonable investigation, and continued to furnish and disseminate the inaccurate information, the threshold question is whether the information furnished by the Defendant is inaccurate or misleading. *Smith v. Trans Union, LLC*, No. 20-4903, 2021 WL 1061213, at *2 (E.D. Pa. March 19, 2021). Where there is no inaccuracy, there can be no claim under the FCRA. *See Patterson v. Sterling Jewelers Inc.*, No. 21-2138, 2021 WL 4592158, at *2 (E.D. Pa. Oct. 6, 2021) ("As Plaintiff concedes, there can be no claim under the FCRA where there is no inaccuracy."). Because Alexander has not alleged an inaccuracy, her reasonable investigation claim also is not plausible. *Accord*, *id.*; *Bolich v. Nelnet Servicing, LLC*, No. 21-886, 2023 WL 4489954, at *5 (M.D. Fla.

July 12, 2023) ("The threshold question in dispute in the parties' summary judgment briefing is whether [the furnisher'] reporting was inaccurate, incomplete, or materially misleading.  Plaintiff also argues that questions of fact exist as to whether [the furnishers] conducted a reasonable investigation.  However, the Court will not review the reasonableness of [the furnishers'] investigation unless it resolves the threshold question of accuracy in Plaintiff's favor.") citing *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) ("Absent that showing [of an inaccuracy], a plaintiff's claim against a furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation.").

### 3.  "'Opt-Out' Provision"

While Alexander's contention that NFCU denied her "right to rescind or opt-out of affiliate information sharing" is not altogether clear, the Court understands her in this context to assert that she wanted NFCU to discontinue sharing information with Equifax or other CRAs.  However, "[t]he FCRA simply does not have a consumer 'opt out' provision."  *Frazier v. Transunion*, No. 23-3637, 2023 WL 6323088, at *4 (E.D. Pa. Sept. 28, 2023).  Accordingly, any FCRA claim that Alexander asserts on this theory is not plausible because it is predicated upon a fundamental misunderstanding of her rights.  *See id.* (finding plaintiff failed to allege an FCRA claim where he contended that furnisher and credit reporting agency "violated his rights because they have publicized private information without his consent" and that this "delinquent account information [should be] excluded from his credit file and/or consumer report based on his purported election to 'opt out' of the inclusion of this information").

Alexander has failed to allege a plausible FCRA claim against NFCU.  The claim will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

B.     **Claim Under the TILA**

The TILA regulates "the relationship between lenders and consumers . . . by requiring certain disclosures regarding loan terms and arrangements." *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009); *see also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) ("Accordingly, [TILA] requires creditors to provide borrowers with clear and accurate disclosure of terms."). "TILA's express purpose is to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 432 (3d Cir. 2018) (quoting *Vallies v. Sky Bank*, 432 F.3d 493, 495 (3d Cir. 2006)). "TILA generally requires that a creditor in a consumer transaction disclose, among other things: '(1) the identity of the creditor; (2) the amount financed; (3) the finance charge; (4) the annual percentage rate; (5) the sum of the amount financed and the finance charge, or total of payments; [and] (6) the number, amount, and due dates or period of payments scheduled.'" *Id.* (quoting *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 188 (3d Cir. 2011)) (alteration in original). Creditors also must disclose definitions and explanations of those terms and information about borrower's rights and must do so in a manner that is reasonably understandable and noticeable to the consumer. *Id.* at 433. A consumer may file suit under TILA against a creditor who fails to comply with the relevant requirements. *Id.*; *see also* 15 U.S.C. § 1640(e).

To state a claim for a TILA violation, a plaintiff must state "with requisite specificity which charges and fees were not properly disclosed and why certain charges and fees are not bona fide and are unreasonable in amount." *Wilson v. RoundPoint Mortg. Servicing Corp.*, No. 21-19072, 2022 WL 3913318, at *5 (D.N.J. Aug. 31, 2022) (citing *Payan v. GreenPoint Mortg.*

9

*Funding, Inc.*, 681 F. Supp. 2d 564 (D.N.J. 2010)). "Without more, such assertions are merely 'bald assertions' and 'legal conclusions' without any factual support." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

As the factual basis of her TILA claim, Alexander asserts that NFCU did not provide a breakdown or periodic statements concerning the amount it charged off. (Compl. at 8.) Alexander misapprehends the purpose and application of TILA, however. The protections TILA provides consumers concerns the initial disclosures of terms and arrangements required at the opening of an account. *Krieger*, 890 F.3d at 432 (explaining that TILA protects consumers by requiring disclosure of credit terms so that they might compare terms available to "avoid the uninformed use of credit"). TILA's provisions does not reach alleged events after an account has been charged off. *See In re Ross*, 338 B.R. 266, 271-72 (Bankr. E.D. Pa. 2006) ("As a general rule, events subsequent to a consumer loan transaction do not affect the validity of the initial disclosures or require the creditor to make further disclosures." (citing 15 U.S.C. § 1634)). The Complaint contains no allegations whatsoever with respect to disclosures NFCU did or did not provide when Alexander opened her credit card account in 2022. The Court will dismiss her TILA claim because it is not plausible.

**C.     State Law Claims**

Alexander seeks to present state law claims against NFCU for negligence, misrepresentation, defamation, libel and for violations of the UTPCPL. These claims are preempted by federal law. "[T]he FCRA broadly preempts any state law "requirement[s] or prohibition[s] . . . with respect to any subject matter regulated under Section 1681s-2 of this title, relating to the responsibilities of any persons who furnish information to consumer reporting agencies." *Rivas v. L&N Builders Grp., Inc.*, No. 22-7544, 2023 WL 4014290, at *3 (D.N.J.

10

June 15, 2023) (citing 15 U.S.C. § 1681t(b)(1)(F)); *see also Cheadle v. Experian*, No. 20-18183, 2021 WL 3144843, at *4 (D.N.J. July 26, 2021) ("Although not yet directly addressed by the Third Circuit, several other circuit courts have held that § 1681t(b)(1)(F) preempts all state and common law claims against furnishers of information with respect to all subject matter regulated under § 1681s-2.") (citing cases).  Courts, including those in this district, "have interpreted . . . [§ 1681t(b)(1)(F)] to bar all state claims, whether statutory or common-law based." *Rivas*, 2023 WL 4014290 at *3 (citations omitted)*; Havassy v. Mercedes-Benz Fin. Servs. USA, LLC*, 432 F. Supp. 3d 543, 547 (E.D. Pa. 2020) ("Multiple district courts within the Third Circuit have likewise adopted this conclusion and found that Section 1681t(b)(1)(F) preempts both state statutory and common law claims against furnishers of information acting under Section 1681s-2.") (citing cases); *see also Cicala v. Trans Union, LLC*, Nos. 15-6790, 15-6801, 2016 WL 2622377, at *4 (E.D. Pa. May 9, 2016) (finding state law defamation claim preempted); *Vullings v. Trans Union, LLC*, 115 F. Supp. 3d 538, 542-43 (E.D. Pa. 2015) (finding state law defamation and UTPCPL claims preempted); *Grossman v. Trans Union*, LLC, 992 F. Supp. 2d 495, 500 (E.D. Pa. 2014) (finding state law defamation and negligence claims preempted).  Accordingly, because the state law claims alleged against NFCU are preempted by federal law, they will be dismissed.  *See Rivas*, 2023 WL 4014290, at *3 (finding that plaintiffs' negligence claim is related to or arises out of duties owed under the FCRA and is preempted); *Washington v. Freedom Mortgage*, No. 20-9332, 2021 WL 1100637, at *3 (D.N.J. Mar. 23, 2021) (finding that plaintiff's proposed Amended Complaint failed to state cognizable claims for defamation and intentional infliction of emotional distress against furnisher of information as they are preempted by § 1681t(b)(1)(F)).

**D.     Injunctive Relief**

In her Complaint, Alexander seeks an injunction ordering NFCU to delete its tradeline from her credit reports and to prohibit further inaccurate reporting.  (Compl. at 9.)  However, injunctive relief is not available to private litigants under the FCRA.  *Washington v. CSC Credit Servs.*, 199 F.3d 263, 268 (5th Cir. 2000).  As the United States Court of Appeals for Fifth Circuit explained in *Washington*, the civil liability provisions of the FCRA expressly refer to damages and attorney fees, but not to injunctive relief.  *See id*. (citing 15 U.S.C. §§ 1681n–1681o).  Elsewhere, the FCRA explicitly grants the Federal Trade Commission the power to pursue injunctive relief.  *See id*. (citing 15 U.S.C. § 1681s(a)).  This "affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC."  *Id*.  Although the United States Court of Appeals for the Third Circuit has not directly ruled on the issue, district courts in this Circuit have barred private litigants from pursuing injunctive relief pursuant to the FCRA.  *See e.g., Dicesari v. Asset Acceptance LLC*, No. 11-6815, 2012 WL 4108944, at *6 (E.D. Pa. Sept. 18, 2012); *Gelman v. State Farm Mut. Auto. Ins. Co.*, No. 06-5118, 2007 WL 2306578, at *9 (E.D. Pa. Aug. 9, 2007).  Therefore, the request for injunctive relief will be dismissed.[4]

---

[4] Alexander references NFCU's April 2025 letter in which it stated that it was not attempting to collect a debt, yet it continued to send her account statements.  (Compl. at 7.)  She believes these actions contradict her wish to "cease all communication" regarding the alleged debt.  (*Id*.)  Alexander may be seeking to allege a claim under the Fair Debt Collection Practices Act ("FDCPA"), which "provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors."  *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005).  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts, or who regularly collects or attempts to collect,

### IV.   CONCLUSION

For the foregoing reasons, the Court will grant Alexander's motion for leave to proceed *in forma pauperis*. The Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. The Court concludes that leave to amend would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

An appropriate Order will be entered separately. *See* Fed. R. Civ. P. 58(a).

**BY THE COURT:**

_____
**MARY KAY COSTELLO, J.**

---

directly or indirectly, debts owed or due or asserted to be owed or due *another*." 15 U.S.C. § 1692a(6) (emphasis added). In contrast, a "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Id.* § 1692a(4). A "debt collector" does not include "creditors who attempt to collect a debt in their own name." *Guyton v. PECO*, 2018 WL 10016428, at *1 (E.D. Pa. Aug. 24, 2018), *aff'd*, 770 F. App'x 623 (3d Cir. 2019) (*per curiam*) ("Plaintiff owed the relevant 'debt' (her utility bill) to PECO, as the creditor for services rendered to her. PECO thus is not a debt collector under the FDCPA."). Alexander appears to assert that NFCU was somehow deceptive about collection of its debt, but she does not state any facts to support that NFCU is a "debt collector" as defined under the FDCPA. Because NFCU is not a debt collector under the FDCPA, but instead is a debt owner, and any alleged FDCPA claim against it must be dismissed.